Thank you, Your Honor. May it please the Court, my name is Wayne Kendall. I'm here with my co-counsel, Mr. Jeffrey Rees, and I have the honor and the pleasure of representing Abigail Marbut in this 42 U.S.C. 1983 damages claim. I want to first address the issue that the Court directed us to address, which was the recent U.S. Supreme Court case of Case v. Montana. The issue in Case v. Montana was whether law enforcement officers had the right under the Fourth Amendment to enter a home without a warrant in order to render aid to a person that was occupying the premises who may be injured or threatened with injury. The Court held that whether an officer has an objectively reasonable belief that the person inside was injured or threatened with injury, the officer can enter the home for the limited purposes of rendering aid or preventing harm. Well, in our case, we don't have that particular issue, and we believe that Case v. Did the Court, though, not do more? I mean, didn't it make clear that the probable cause standard is what makes sense in the criminal context and that in an emergency aid context that is divorced from criminal investigation, the standard is not probable cause? That's what I'm concerned about. No, I believe the Court in this case found that the officers had probable cause under the mental health seizure standard, which is the same standard, essentially, as the probable cause standard, which says that in order for an officer to seize a person for a mental health evaluation, the officer has to find that that person is a danger to harm themselves or others under a probable cause standard and not an objectively reasonable standard, which is what the Court in Case v. Montana found. In essence, in Case v. Montana, the standard was lowered. A mental health seizure, would you agree with me, is not a criminal investigation. When an officer is dealing with a mental health seizure, most definitely it is not. Yeah, and isn't it more in the nature of emergency aid? I would not characterize it as an emergency aid, and in this particular case, there was no emergent circumstances. Is it a third circumstance, so it's not probable cause, it's not, I mean, it's not criminal investigation, it's not emergency aid, and it's just sui generis? No, it's the standard that has been announced in this Court, in May v. City of New Hampshire, in Roberts v. Fieldman, and in Ingram v. Kubiak, has all articulated the standard in mental health seizure situations as a probable cause standard. It's always treated as probable cause. My concern is the Supreme Court's now told us, very recently, that probable cause is something that you use for criminal investigations, and you agree with me, the mental health seizure is not criminal investigation. That's correct. That you don't have to use probable cause in the emergency aid context. You don't dispute that, but your argument is that this is somehow different from that. Why would we apply, in the light of case, why would we apply probable cause? Well, first of all, we have to distinguish case v. Montana because it was a home intrusion case. I know. Even in a home situation, the Supreme Court's saying, which is the core of Fourth Amendment protection, the castle, every man's castle, the home, you can enter without probable cause when it's emergency aid, is what the Supreme Court told us. That's true. Because probable cause is for criminal investigations, and that's not what this is. Now we're outside a home, which to me, suggests less of a concern, not more of a concern, and it looks to me like an emergency aid situation as well. What am I missing? Well, let me back up for a second about case v. Montana. Case v. Montana reiterated the rule that was first announced in Brigham City v. Stewart, which was a 2006 case. The standard that has been enunciated in this case, in the 11th Circuit, in those three cases that I just announced, City of Nahanta, Roberts v. Spielman, and Ingram v. Kubiak, all established a probable cause standard after Brigham City v. Stewart was rendered. So if that standard was wrong in those three cases, it was not wrong because of case v. Montana. I agree with you that we would not be able to do it based on that. My concern is that after we have said that, notwithstanding that, I mean, the whole point of when the Supreme Court takes these cases and they say, hey, inferior courts, you're not getting the message, okay? And they take case v. Montana and they say, you know, we've told you this before, you're not getting the message. And they explain, look, probable cause is for criminal investigations. Emergency aid is different. Well, criminal investigations on a terror stop standard only deal with a reasonable suspicion. If that's an officer safety concern. Well, let me ask this, because is it therefore your position that if we eliminate the probable cause requirement here, you lose? Or can you still win under this lesser standard that the Supreme Court arguably is now imposing on us? Yes, we still win. Even if you adopt the standard that was adopted in case v. Montana, which was an objectively reasonable standard, we still win. But I want to reiterate that our factual situation is materially different from what happened in case v. Montana, which was an emergency aid situation. We don't have an emergency aid situation in our case. Okay. A mental health seizure seems a lot like it to me. But let's talk about why you win anyway, because not only would you have to establish that this was a constitutional violation, but that it was clearly established in law by controlling precedent. Yes. Well, the controlling precedent are those three cases that we just stated on. Oh, there we go. There becomes a problem. And if those cases have been abrogated by the Supreme Court, why do you win anyway? Because we don't have an emergency situation here. We have a situation where the officers were on site to back up the EMTs who had been called because the mother thought the daughter had ingested GHB. And that she was suffering from a drug overdose. And that she was suffering from a drug overdose, which obviously she was not because she got up out of the car and started walking around and talking and arguing with the police for 10 minutes. So that abrogated that whole reason for them to be there on a welfare check when it was obvious that she was no longer in danger of having been overdosed on any drug. So we don't have an emergency situation. That's why we win anyway, because there was no reasonable belief under the case versus Montana standard, which is a reasonable belief. Well, I mean, the EMT is there, and I watched the video. And there are multiple questions about, you know, first of all, is she coherent? So there was some back and forth on that. And I think the tone at this point, they're just saying, can we check your vitals? We just want to make sure you're okay. And then it starts to escalate to this, you either do this or you do that, she's encased, et cetera. So number one, I think just trying to clarify how you're defining a mental health crisis. And then number two, if it started that way, would it all be your contention that it transitioned into something else that would justify the Fourth Amendment standard? I believe it did transition. Once she got out of the car, talking, walking, arguing, and not only that, the EMTs, who were the persons that were responsible for determining her coherence, determined that she was fine and that they could not take her. And they told the police officers that in no uncertain terms. Amanda Pitts, who was an EMT there, stated, and it's in her, in Officer Phillips's body cam at minute 1530, we cannot take her. We'd like to take her, but she's coherent. We can't take her. She told the police officers that. So it transitioned very definitely. And in fact, Officer Pena told her repeatedly, you're not in trouble. You hadn't done anything wrong. I see my time is up. You've saved five minutes for rebuttal, Mr. Ido. I did. So let's hear from Mr. Williams. Good morning. May it please the court. I'm Terry Williams. I represent the appellees, the officers who were sued in this case. And first of all, we believe the district court properly held that the officers did not violate the Fourth Amendment by seizing the plaintiff for her protection under the facts and circumstances presented to them. And to go right to the decision by the Supreme Court in Case v. Montana, this was an emergency aid situation. Now, the district court analyzed it under the existing Eleventh Circuit case law that did use the terminology of probable cause and arguable probable cause in the context of qualified immunity, which is ultimately what the court would be addressing here as arguable probable cause, which really incorporates the reasonable belief standard that the Supreme Court noted in Case v. Montana should apply to emergency aid situations. And I agree with the court that this situation dealing with someone who's in need outside a residence is even less stringent of a situation than what the Supreme Court dealt with in Case. Therefore, it seems more applicable that all the officers needed was a reasonable belief that the plaintiff was in danger, that she needed medical attention. And that's what this was all about, as I'm sure your honors have watched the video and seen. And when the real heart of this alleged injury occurs, she's saying she wants to leave, she needs to go to the bathroom. From the angle that I saw, it looks like the officer tries to stop her and her reaction is what causes him to say, don't touch me. And then it just devolves from there. So is that an accurate description? Because if so, where is the danger, the imminent danger to herself or others? Well, your honor, that gets into the use of force to affect the seizure. I think the point that Officer Phillips has the encounter with her, she still has not been medically cleared. And I disagree factually from the evidence, Officer Phillips understood that she had to be medically cleared. Now there was discussion, there was a lot of people out there and there are some other comments, but Officer Phillips is the focal point because he's the one that ultimately physically takes. But yeah, he doesn't say, no, you're not done yet. You need to get clearance. He says, don't touch me. And then it gets physical. When she ran into him, and I think the video firmly shows she turned when they were still trying to get her to cooperate, to be examined. They haven't determined if she's okay yet. The mother has said this is the scariest thing she's ever seen in her life. She's been on drugs for a long time. She thinks she's overdosed on GHB. She has gotten up. I mean, as the court saw in the video, at first she's just out of it. I mean, she's unresponsive. And that I don't think is debatable. My question is, can it ever transition? Is it that if a law enforcement is called for a mental health crisis, does it remain a mental health crisis throughout the entire transaction? So no matter what happens, an injury, a broken arm, or a death, it's still covered under this lesser standard? Your Honor, we believe it would be so long as it's a reasonable amount of time and under the circumstances where this person who's reportedly having a drug overdose has not been medical cleared yet, that it still would apply. And this was not an unreasonable amount of time. I mean, they had been there maybe 20 minutes, 15 to 20 minutes, trying to deal with this situation and trying to convince her to get checked out. And for whatever reason, she went from sort of a comatose state to suddenly being volatile, agitated, back and forth. She could not remember her date of birth. She clearly was confused. And they had no idea how much GHB she had taken. Whether now she was going to go into another phase of that, I mean, that's a very dangerous situation and can cause death, as the District Court noted in its opinion. So it sounds like even though arguably probable cause isn't required, you're still incorporating a totality of the circumstances for the objective analysis? Yes, for the reasonable belief, as the Supreme Court noted in case. To address the question that this Court noted that we should address, I do believe that Officer Phillips had probable cause to arrest her. If we didn't even have the reasonable belief, he had seen the plaintiff's condition. He had heard the report from the mother that she was overdosing on GHB. So he had probable cause that she had possessed and ingested an illegal drug, which would support the arrest. And I know the Court hasn't discussed that, but that was the second question that was presented. So I think that was even, that shows even a higher standard, I think, that was met under these circumstances. So we believe the District Court properly held that the plaintiff could be seized under this situation. And Officer Phillips, who's the one, he got into position because she was not cooperating. He specifically got into position to block that exit route. And it was a narrow alleyway through two cars. And she then turned suddenly, she did say she wanted to go to the bathroom, to go in the house, and just went straight into him. And that's when he did say, don't touch me. And she threw her hands up. And you can see that in the video. Unfortunately, from that point, when the struggle goes on, then things are blocked. And you see in and out of different things going on in the video. We believe that the video overall, if you show it, shows she was struggling. I mean, there's no explanation, no logical explanation, for the movement, the back, all around, with the camera jerking back and forth, other than she's struggling. If she's compliant, he's trying to put her arms behind her back. If she's compliant, he does that. And it's over with. But clearly, she was not compliant. She was struggling. And then unfortunately, as this developed, she was walking, pulling them away, and they fell into a car. And at some point, her arm got broken in that process. But you can see at various times in the body cam video, if you do it slowly, frame by frame, you can see all throughout, her hand, her arm is just behind her back, being held by Officer Phillips. It gets obscured sometime, but then you see it in the next frame. You can see it's still there. And it's not clear what caused the break. I believe that the video really strongly shows that once she kept pulling and pulling, and then fell up against the car, it just was the tension was on it, and it snapped. But the use of force in that situation was objectively reasonable, because Officer Phillips had a reasonable belief that she was in danger and needed to be seized and kept there until she was medically cleared. And that gives him the authority to use what we believe was a minimal amount of force to try to overcome the resistance and to detain her. So we believe that not only was there the reasonable belief to seize, but there was a reasonable amount of force used to achieve that. But unfortunately, she received a serious injury. But the use of force falls in line with a number of cases out of the 11th Circuit and District Court cases that have upheld the use of force of a restraining manner or even a takedown procedure that results in broken bones. It's not that the injury doesn't drive the analysis and make it a situation where there was excessive force used. And overall, the facts and circumstances here shows that Officer Phillips acted reasonably. So we believe the Court should affirm the decision of the District Court. Thank you. Great. Any more questions? No. I always appreciate the time being given back to me, Mr. Williams. Thank you, Your Honor. Mr. Kendall. I want to briefly talk about the excessive use of force case and the Graham factors. Judge Carver found that the first factor, the severity of the crime, was inapplicable. This Court has previously said, both in Mercado v. City of Orlando and Teal v. Lozado, that in the mental health context, that all of the factors apply. What about the second question, which he addressed, which is, okay, officers have probable cause to believe that your client ingested a controlled substance, and therefore, they have probable cause to affect an arrest. Not only did they not have probable cause, they didn't have a reasonable belief. The only indication whatsoever that she had ever ingested drugs was what her mother said, and her mother never saw her ingest any drugs. I mean, from every indication, I mean, they come out because of her mother's report. They have what the EMTs are telling them, that she's nodding off she's agitated, all of which would be consistent with the idea that she's having some kind of medical problem that would be consistent with a drug overdose. Why isn't that enough for probable cause? Because if you assume that just because a person is asleep on the backseat of a car... I'm saying all those facts together. I'm saying all those facts together, Mr. Kendall. Why isn't that enough for probable cause? The mother has reported this. This is what she said. The mother who's saying, I'm tired of this. She needs to go into rehab. The EMTs are there. They're checking her out. She's nodding off. I mean, there are all kinds of signs of a drug overdose. Well, there may be signs of a drug overdose, but apparently after all of that, her being in the car, she's up walking, talking, arguing with the police. Obviously, she has not overdosed on drugs because she's doing that for 10 minutes prior to the time that she tries to leave to go to the wakes up, talks, walks, argues with the police for 10 minutes that they should have arrested her before she woke up or after she is out there with 10 minutes of arguing with the police. She's obviously not overdosed. We can all agree that she had not overdosed. In fact, Officer Phillips stated that- If you stop someone for driving under the influence and they refuse to breathalyzer, and they get back to the station and they're walking and talking and they're conversing, you have to let them go? No, that doesn't mean they weren't under the influence at the time they were driving. And it doesn't mean that this person hadn't ingested a controlled substance when they were called out. Well, the substance that she was alleged to have ingested, gamma-hydroxybutyric acid, is a legal drug. It's a Schedule III drug, which means that it has legitimacy in- I thought it was a Schedule I. It's a Schedule III drug that has legitimate medical use. I think, again, not sure this is the strongest argument for you. So let's say that the police were probably there for a mental health crisis, and to my question about the transition, maybe help me understand the difference between a proper seizure, which arguably the officers had, I mean, now they're circling around her, she says she wants to leave, perhaps because she's seized at that point, but it moves from just having her enclosed to a physical altercation. Is there any law that takes us beyond the seizure to the actual force? And I'm asking in particular, because as I asked earlier, it seems that as she's trying to move, it's the officer who touches her first in her reaction. Is there any law that will take us into that realm of unlawful behavior on the officer's part? Yes. She had not been told that she was under arrest. She was free to leave. She was free to disengage from the encounter. She stated that she had to go to the restroom. She attempted to go to the restroom. The district court found that he touched her first. The police report from his fellow officer said that Officer Phillips stepped in front of her to block her away when she was free to leave. There was no reason for her to be under a seizure. There was no reason for him to go hands-on on her at the time that he did and broke her  Okay, Mr. Kendall. I think we understand your case, and we're going to move on to our next one, our fourth.